HUESTON HENNIGAN LLP
Alison L. Plessman (SBN 250631)
aplessman@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825

Attorneys for Plaintiff
VMWARE LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VMWARE LLC,<br><br>      Plaintiff,<br><br>  vs.<br><br>ALLSTATE INSURANCE COMPANY.<br><br>      Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

## NATURE OF THE ACTION

This action for breach of contract, declaratory judgment, and specific performance arises from Defendant Allstate Insurance Company's refusal to comply with Plaintiff VMware LLC's ("VMware") contractual audit rights and related reporting and recordkeeping obligations under the parties' agreements. VMware alleges as follows:

## PARTIES

1.      Plaintiff VMware LLC is a Delaware limited liability company with its principal place of business in Palo Alto, California.

2.      Defendant Allstate Insurance Company is an Illinois corporation with its principal place of business in Northbrook, Illinois.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over Allstate Insurance Company under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

4.      Venue in this district is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district, VMware resides in this district, and Allstate Insurance Company is subject to personal jurisdiction in this district.

5.      This Court has personal jurisdiction over Defendant because the software at issue is owned in and controlled from this forum, and the harm resulting from Defendant's conduct was suffered in this forum. Defendant has purposefully availed itself of the privilege of conducting activities in this forum by licensing software from Plaintiff (a California resident), entering into agreements with Plaintiff, causing foreseeable harm to Plaintiff in this forum. Defendant knew, or reasonably should have known, that VMware: (a) is located in California, and that Defendant directed and aimed its unauthorized activities at VMware, which is located in the Northern District of California; and (b) would likely suffer the brunt of the harm caused by Defendant in California at VMware's principal place of business in Palo Alto, California within this District. As a result, Defendant could reasonably anticipate being haled into court here.

6.      The exercise of jurisdiction is reasonable and does not violate fair play or substantial justice.

### GENERAL ALLEGATIONS

#### A.   The Parties' Agreements and VMware's Audit and Reporting Rights

7.      On December 12, 2008, VMware entered into a Master End User License Agreement ("Master Agreement") with Allstate Insurance Company and its Affiliates (collectively, "Allstate").[1]

8.      Section 3.8 of the Master Agreement, titled "Audit Rights," requires Allstate to maintain accurate records as to its use of VMware's software for at least two (2) years from the last day on which support and subscription services expired for the applicable software.

9.      Section 3.8 further provides that, during the period in which Allstate is required to maintain such records, VMware (or persons designated by VMware) is entitled to inspect such records and Allstate's computing devices, in order to verify that Allstate used the software in accordance with the terms of Master Agreement and that Allstate has paid the applicable license fees and support and subscription services fees for the software.

10.      Section 3.8 requires Allstate to promptly pay for any underpayments revealed by the audit. Moreover, if an audit reveals an underpayment by Allstate of more than ten percent (10%) for the period audited, Allstate must reimburse VMware for the cost of the audit and any applicable fees.

11.      On September 30, 2019, the parties executed the Enterprise License Agreement ("ELA"). The ELA granted Allstate a license to use certain VMware software for a period of three years (the "ELA Period") and expressly stated that Allstate's use of VMware's software is subject to the terms of the Master Agreement.

12.      The ELA required Allstate, within thirty days following the expiration of the ELA Period, to report to VMware the total number of licenses it deployed during the ELA Period and to

---

[1] Section 1.1 of the Master Agreement states, "'Affiliate' shall mean any entity directly controlled by Customer, provided, however that Customer shall be responsible for all such Affiliates as if such Affiliate were Customer hereunder, and Customer shall ensure compliance by Affiliates with the provisions of this EULA. An ownership, voting or similar interest representing fifty percent (50%) or more of the total interests then outstanding of the pertinent entity shall constitute 'control,' for the purposes of this definition." The Master Agreement refers to Allstate and its Affiliates collectively as "Customer," "You," or "Your."

provide additional information reasonably requested by VMware to confirm compliance with the terms of the ELA. Section 16 of the ELA states, "Customer's reporting requirements in this ELA shall apply to Affiliates' use of the Software."

13.     On July 29, 2022, the parties executed Amendment No. 1 to the ELA ("ELA Amendment" and, together with the ELA, the "ELA Contracts"). The ELA Amendment granted Allstate a license to use additional VMware software in addition to certain software already deployed under the ELA, and extended the ELA Period to July 29, 2025.

14.     The ELA Amendment, like the ELA, expressly provided that Allstate's use of the VMware software is subject to the terms of the Master Agreement.

15.     The ELA Amendment required Allstate to provide VMware with reports detailing the total number of software licenses it deployed during the ELA Period; first, on October 29, 2022, and second, within thirty days following the expiration of the ELA Period.

16.     The ELA Amendment also required Allstate to provide VMware with any additional information reasonably requested by VMware to ensure Allstate's compliance with the ELA, and maintain accurate records regarding its use of the software sufficient to provide VMware with evidence of compliance with the ELA.

### B.  VMware's 2025 Audit and Allstate's Delay and Refusal

17.     On March 4, 2025, VMware issued a formal audit notice to Allstate, which informed Allstate that it had been selected for an audit under the Master Agreement's audit provision. The notice letter further informed Allstate that "any changes in [Allstate's] environment such as upgrades, decommissions, migrations, etc. made from the date of this letter throughout the license review process must be reported directly and promptly to [VMware]."

18.     On April 11, 2025, following an introductory call, VMware emailed Allstate informing Allstate that audit workstream teams would reach out to schedule audit kick-offs.

19.     On April 16, 2025, VMware's audit partner, Connor Consulting, contacted Allstate to schedule the audit kick-off and provided the initial data-collection materials: a technical questionnaire, a deployment detail workbook, and scripts.

20.     On May 5, 2025, Connor Consulting held the audit kick-off call with Allstate and

again provided the audit materials.

21.     On May 6, 2025, Connor Consulting followed up with Allstate, urging timely compliance and emphasizing the importance of returning the technical questionnaire by the following week to keep the audit on track.

22.     On May 7, 2025, Allstate acknowledged receipt of the audit materials but stated it would not be able to complete the questionnaire by the following week.

23.     On May 14, 2025, Connor Consulting informed VMware that Allstate planned to share the completed technical questionnaire by that week.

24.     On May 22, 2025, Connor Consulting informed VMware that it had not received a response from Allstate regarding the audit.

25.     On May 29, 2025, Connor Consulting provided an additional status update to VMware, informing VMware that it still had not received a response from Allstate regarding the audit.

26.     On or around June 3, 2025, VMware reached out to Allstate regarding the audit and to resume discussions.

27.     On June 25, 2025, Connor Consulting asked Allstate for availability to schedule a working session for the VMware audit, and for an updated timeline to deliver the completed questionnaire.

28.     On July 10, 2025, Connor Consulting requested delivery of a completed questionnaire with current responses. On July 15, 2025, after continued silence, Connor again requested delivery by July 16, 2025.

29.     On July 22, 2025, Allstate gave preliminary target dates for returning audit materials, stating it would not provide the VMware materials until August 29, 2025. When August 29 arrived, Allstate failed yet again to provide the promised materials.

30.     Throughout August and September 2025, VMware sent weekly follow-ups. Allstate continued to stonewall and withheld the requested materials.

31.     On September 12, 2025, Allstate informed VMware's consultant that it had "removed VMware from all devices," and therefore Allstate was no longer able to "execute the Scripts provided

by Broadcom as the scripts are dependent on having VMWare components running in the environment." Likewise, Allstate claimed that since it now had "no access to data," it was "also unable to populate any data within the technical questionnaire." Moreover, while Allstate attached to its email a technical questionnaire for the "NatGen VMWare ELA" environment, it was woefully incomplete.

32. VMware's consultant responded on September 15, 2025 with several follow-up questions. Allstate remained unresponsive.

33. After seven months of obfuscation and delay, on October 1, 2025, Allstate informed VMWare that "all VMWare instances have been terminated and removed from Allstate's VMWare ELA environment." Allstate further unilaterally determined and declared that this audit was "complete and satisfied, in compliance with the contractual entitlements, with no further action or obligation from Allstate." Allstate redirected all future correspondence to counsel.

34. On October 2 and October 6, 2025, Connor Consulting followed up with validation questions and requested counsel's contact details. Allstate did not respond.

35. Allstate has refused to provide completed questionnaires, deployment data, access to computing environments, or other records and cooperation necessary to allow VMware to conduct and complete its audit under Section 3.8 of the Master Agreement and to verify Allstate's compliance with the reporting and recordkeeping obligations under the ELA Contracts, including the ELA Amendment.

36. Allstate's claimed termination of all VMware instances and unilateral declaration that the VMware audit is "complete" do not relieve Allstate of its contractual obligations to maintain accurate records, report deployments as required, and permit VMware to conduct an audit to verify usage and fees due for the ELA Period.

37. VMware has incurred, and continues to incur, damages—including internal and external audit costs, delay, and prejudice resulting from Allstate's obstruction—which impairs VMware's ability to verify compliance and underpayments.

38. VMware now brings this action to vindicate its rights under the Master Agreement and ELA Contracts.

## COUNT I
### (Breach of Contract)

39.     VMware realleges and incorporates by reference the foregoing allegations of this Complaint as if fully set forth herein.

40.     The Master Agreement, ELA, and ELA Amendment are valid and enforceable contracts.

41.     Section 3.8 of the Master Agreement, titled "Audit Rights," provides that Allstate will maintain accurate records as to its use of VMware's software and that VMware or its designees are entitled to inspect Allstate's records and computing devices to verify compliance and fees due.

42.     Through the ELA Contracts, VMware granted Allstate a license to use certain of its software. The ELA Contracts provide that Allstate's use of VMware's software and services is subject to the terms and conditions of the Master Agreement.

43.     The ELA and ELA Amendment both required Allstate to maintain accurate records sufficient to demonstrate compliance with the ELA Contracts, and to provide information reasonably requested by VMware to confirm such compliance.

44.     The ELA Contracts also required Allstate to report the total number of software licenses it deployed on specified dates; first, on October 29, 2022; and second, within thirty days following the expiration of the ELA Period. The ELA Period expired on July 29, 2025. Allstate did not provide the required reporting by August 29, 2025.

45.     VMware has fully performed its obligations under the Master Agreement, ELA, and ELA Amendment.

46.     Allstate breached the Master Agreement by not complying with VMware's audit demand and refusing to cooperate with and provide information to VMware's audit partner, Connor Consulting, including by withholding records, failing to complete and return the technical questionnaire and deployment workbooks, failing to provide information reasonably requested to verify use and fees due, failing to provide VMware access to its computing devices, and unilaterally declaring the VMware audit workstream complete.

47.     Allstate breached the ELA Contracts by failing to provide required reports regarding software deployment details.

48.    Allstate also breached the ELA Contracts by failing to provide information reasonably requested by VMware to confirm Allstate's compliance with its obligations under the ELA Contracts.

49.    Allstate's failure to comply with the audit has impaired VMware's ability to protect its rights, including the ability for VMware to verify whether Allstate has underpaid fees for the period audited or infringed VMware's copyrights. Moreover, if the audit demonstrates an underpayment exceeding ten percent for the audited period, Allstate must reimburse VMware for the cost of the audit in addition to paying all underpaid fees. VMware has also incurred expenses in attempting to enforce its audit rights.

50.    As a direct and proximate result of Allstate's breach, VMware has suffered damages in an amount to be determined at trial.

51.    VMware also seeks specific performance compelling Allstate to immediately provide VMware complete access to all records, data, systems, computing devices, and other materials necessary to verify compliance with the Master Agreement and ELA Contracts.

## COUNT II
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

52.    VMware realleges and incorporates by reference all foregoing allegations of this Complaint as if fully set forth herein.

53.    Section 3.8 of the Master Agreement, titled "Audit Rights," provides that Allstate will maintain accurate records as to its use of VMware's software and that VMware or its designees are entitled to inspect Allstate's business records and computing devices to verify compliance and fees due.

54.    Through the ELA Contracts, VMware granted Allstate a license to use certain of its software. The ELA Contracts provide that Allstate's use of VMware's software and services is subject to the terms and conditions of the Master Agreement.

55.    The ELA and ELA Amendment both required Allstate to maintain accurate records sufficient to demonstrate compliance with the ELA Contracts, and to provide information reasonably requested by VMware to confirm such compliance.

56.    The ELA Contracts also required Allstate to report the total number of software licenses it deployed on specified dates; first, on October 29, 2022; and second, within thirty days

- 8 -

following the expiration of the ELA Period. The ELA Period expired on July 29, 2025.

57. Allstate's refusal to cooperate with and systematically delaying or obstructing the audit demanded by VMware pursuant to its rights under the Master Agreement constitutes a breach of the implied covenant of good faith and fair dealing inherent in every contract.

58. Allstate's conduct has unfairly frustrated the purpose of the parties' agreements by depriving VMware of the benefit of its audit rights and the ability to detect noncompliance with the Master Agreement and ELA Contracts.

59. VMware has fully performed its obligations under the Master Agreement and ELA Contracts.

60. Allstate's breach of the implied covenant of good faith and fair dealing has impaired VMware's ability to protect its rights, including the ability for VMware to verify whether Allstate has underpaid fees for the period audited or infringed VMware's copyrights. Moreover, if the audit demonstrates an underpayment exceeding ten percent for the audited period, Allstate must reimburse VMware for the cost of the audit in addition to paying all underpaid fees. VMware has also incurred expenses in attempting to enforce its audit rights.

61. As a proximate result of Allstate's breach of the implied covenant of good faith and fair dealing, VMware has suffered damages in an amount to be determined at trial.

62. VMware also seeks specific performance compelling Allstate to immediately provide complete access to all records, data, systems, computing devices, and materials necessary to verify compliance with the Master Agreement and ELA Contracts.

## COUNT III
### (Declaratory Judgment)
### 28 U.S.C. § 2201

63. VMware realleges and incorporates by reference all foregoing allegations of its Complaint as if fully set forth herein.

64. An actual, present, and justiciable controversy exists between VMware and Allstate concerning VMware's audit, reporting, and recordkeeping rights and Allstate's obligations under the Master Agreement and ELA Contracts.

65. Section 3.8 of the Master Agreement, titled "Audit Rights," provides that Allstate will

maintain accurate records as to its use of VMware's software and that VMware or its designees are entitled to inspect Allstate's records and computing devices to verify compliance and fees due.

66.    Through the ELA Contracts, VMware granted Allstate a license to use certain of its software. The ELA Contracts provide that Allstate's use of VMware's software and services is subject to the terms and conditions of the Master Agreement.

67.    The ELA and ELA Amendment both required Allstate to maintain accurate records sufficient to demonstrate compliance with the ELA Contracts, and to provide information reasonably requested by VMware to confirm such compliance.

68.    The ELA Contracts also required Allstate to report the total number of software licenses it deployed on specified dates; first, on October 29, 2022; and second, within thirty days following the expiration of the ELA Period. The ELA Period expired on July 29, 2025.

69.    The parties' dispute over the meaning of the Master Agreement and ELA Contracts has created substantial uncertainty and threatens to impair VMware's rights.

70.    VMware seeks a declaratory judgment under 28 U.S.C. § 2201 that the Agreements should be interpreted consistent with VMware's interpretation, and that Allstate's contrary interpretation is without merit.

71.    Specifically, VMware seeks a declaratory judgment that VMware is entitled to audit Allstate pursuant to Section 3.8 of the Master Agreement, including inspection of records and computing devices, and that Allstate must reasonably comply with such audit.

72.    VMware also seeks a declaratory judgment that Allstate is obligated to maintain accurate records, and to provide such records and information to VMware sufficient to verify compliance with the ELA Contracts, including the total number of any software deployments as of August 29, 2025.

73.    VMware also seeks a declaratory judgment that Allstate's claimed termination of all VMware instances and unilateral declaration that the VMware audit workstream is complete does not satisfy its audit, reporting, and recordkeeping obligations under the Master Agreement and ELA Contracts.

74.    Declaratory relief is necessary and appropriate to resolve this dispute, provide

certainty to the parties, and avoid further harm to VMware.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, VMware demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

VMware requests the following relief:

1.    Specific performance compelling Allstate to immediately provide complete access to all records, data, systems, computing devices, and materials subject to audit under the Master Agreement;

2.    Injunctive relief enjoining Allstate from destroying, altering, or concealing any records relating to Allstate's noncompliance with the Master Agreement and ELA Contracts or evidence relating to its use and deployment during and after the ELA Period;

3.    Damages in an amount to be proven at trial;

4.    Declaratory judgement that the Master Agreement and ELA Contracts are properly interpreted consistent with VMware's position as set forth above;

5.    Attorneys' fees and costs as permitted by law or contract;

6.    Judgment in favor of VMware and against Defendants; and

7.    All other relief, legal or equitable, as the Court finds appropriate.


Dated:  December 15, 2025                    HUESTON HENNIGAN LLP


By:    _____
                    Alison L. Plessman

                    *Attorneys for Plaintiff*
                    *VMware LLC*

- 11 -
COMPLAINT